Argued June 24, modified July 1, further modified on rehearing November 4, 1919.

# GRABER *v.* BOSWELL

(181 Pac. 986; 185 Pac. 231.)

**Mortgages—Future Advances—Sufficiency of Evidence.**

1. In suit to foreclose a mortgage for future advances, evidence *held* insufficient to establish plaintiff's right to more than $83.40 on an amount of $250 claimed by plaintiff to have been paid by the original mortgagee, her deceased husband, as attorney for defendant mortgagor, for a metallic casket for the remains of defendant's husband.

**Mortgages—Future Advances.**

2. In suit by widow of attorney, who had acted for defendant widow of his friend, to foreclose a mortgage given by defendant to such attorney to secure advances, the attorney having filed a voucher against the estate for an amount of $50 claimed to have been paid for exhuming and transporting the remains of defendant's husband for interment elsewhere, the additional charge of $111 shown in his personal account against the widow, who insisted that even the $50 charge is excessive, should be eliminated.

#### ON REHEARING.

**Appeal and Error—Modification of Opinion.**

3. In an action to foreclose a mortgage, where it appears that the note which the mortgage secured was given to cover future advances, the Supreme Court on appeal will consider the action as one for an accounting and dispose of the matter, where it is clear that no evidence other than that before the court could possibly be produced in another formal suit for an accounting.

**Mortgages—Burden of Proof—Advances by Mortgagee.**

4. In an action to foreclose a mortgage securing a note given to cover future advances, the burden of proof rests upon the plaintiff to establish the amount of money advanced to the defendant.

**Mortgages—Evidence on Foreclosure—Items to be Considered.**

5. In an action to foreclose a mortgage securing a note given to cover future advances, the fact that mortgagor shipped mineral water to the mortgagee must be disregarded, where there is no evidence as to the quantity of water shipped or its market value.

From Douglas: GEORGE F. SKIPWORTH, Judge.

Department 1.

This is a suit to foreclose a mortgage upon real estate. The complaint is in the usual form. The

note and mortgage were both executed in favor of Thomas F. Graber, who subsequently died, leaving a will naming his widow, the plaintiff herein, as his sole legatee.

The answer admits the execution of the instruments upon which the suit is based, but denies that they were executed for a valuable consideration, and then pleads affirmatively that defendant is the widow of Benjamin D. Boswell, who died May 19, 1907, and who for a long time prior to his death, was a client and close personal friend of Thomas F. Graber, who was a practicing attorney at law in Oakland, California; that Boswell, in his last will and testament had appointed Graber to be the executor thereof, but owing to the fact that Graber was a resident of California, he could not qualify as such executor, and the defendant was therefore appointed administratrix with the will annexed, of her husband's estate. She then retained Graber as her legal adviser in the administration of the estate, relying implicitly upon him faithfully and honestly to direct her therein, placing special confidence in him by reason of his intimate friendship for her deceased husband. She avers that Graber represented to her that it would be necessary for her to have some ready money wherewith to pay the debts of the estate, including a mortgage of $700 due to the State Land Board of Oregon, and suggested $1,000 as the sum necessary to be raised, but later induced her to execute the note and mortgage above mentioned, in the sum of $2,000. She further asserts that he promised to protect her interests and that she would only be required to pay thereon such sums as should be thereafter actually advanced by him for such purposes; that thereafter, and prior to the final settlement of the

estate, the defendant, with the advice of Graber, sold a portion of the real estate for $2,000, and this sum was used to pay the $700 mortgage to the State Land Board, and all of the debts of the estate, including the expenses of administration, leaving a surplus after all debts were paid, and that all claims of said Graber against the estate or herself have been fully paid. It is further alleged that she has repeatedly sought to obtain a settlement and adjustment with Graber, but the same had always been postponed by him, and she has never succeeded in securing the same.

The reply admits the personal friendship and professional relations existing between Graber and Boswell, the allegations in regard to the appointment of defendant as administratrix of her husband's estate, the sale of certain real estate for $2,000, and the employment of Graber as defendant's legal adviser, but denies generally all other allegations of the affirmative answer.

A trial was had, resulting in a decree in accordance with the prayer of the complaint, and defendant appeals.                                              MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

For respondent there was a brief over the names of *Messrs. Neuner & Wimberly* and *Mr. C. L. Colvin,* with an oral argument by *Mr. Carl E. Wimberly.*

BENSON, J.—The history of this case presents an unfortunate situation. Thomas F. Graber, the payee named in the note and mortgage, was a lawyer, having his offices in Oakland, California. After the final settlement and distribution of the Boswell estate, and

after all of the transactions involved in the present litigation, he died, and the plaintiff, being his widow, succeeded to his interests. She evidently knew very little of her husband's business affairs prior to his death, and there is no one else who can supply the information. If the defendant ever kept any connected record of her financial transactions, it is not before us. Thomas F. Graber apparently left no detailed record of his financial dealings with Mrs. Boswell, other than an account book which was found among his effects in his office, after his decease. Our investigation of the facts then, is confined to the records of the County Court, in the matter of the estate of B. D. Boswell, deceased, the book accounts and canceled checks of Thomas F. Graber, deceased, and the parol testimony of Mrs. Boswell. After a careful investigation of the entire record, we are impressed with the fact that there is no evidence of any conscious bad faith upon the part of any of the parties hereto, or of any desire to deal otherwise than in perfect honesty and fairness.

1. Prior to his death, which occurred on May 19, 1907, B. D. Boswell owned certain lands in Douglas County, Oregon, known as Boswell Springs, whereon he conducted a hotel which was to some extent popular by reason of the reputed medicinal value of the mineral springs situated upon the premises. For several years prior to May 19, 1907, Thomas F. Graber, a practicing attorney, of Oakland, California, had been a close personal friend and the legal adviser of Captain Boswell, and the latter, in his last will and testament had nominated Graber to be the executor thereof, without exacting any bond for the faithful performance of the duties involved therein. Owing to the fact of his being a resident of another state Graber could not

qualify as such executor, and the widow and sole legatee, Emma E. Boswell, received letters testamentary as administratrix, with the will annexed, and Graber was retained by her as her legal adviser. It was soon discovered that while the claims against the estate were considerable, the only ready money amounted to no more than $108. After her husband's death, Mrs. Boswell continued to conduct the hotel with some success until the summer of 1908, when the buildings were destroyed by fire. Thereafter, Graber suggested to Mrs. Boswell, who in the meanwhile was living in Oakland, California, that she would need money to meet the claims against the estate, as well as for her personal requirements, that she should execute to him a note and mortgage for $2,000, upon the real estate, out of which claims would be paid, and money provided for her maintenance. This was done on October 22, 1908. Subsequently, a portion of the land was released from the lien of the mortgage, and sold for the sum of $2,000. On September 1, 1909, Graber mailed to Mrs. Boswell an itemized statement of the fund thus acquired, from which it appears that after paying the principal and accrued interest on a note to the State Land Board, together with taxes thereon, and certain obligations of Mrs. Boswell's, there was a balance of $578.30, which he paid her by check. This statement disposes satisfactorily of any contention that this fund was applied to the payment of any other claims of Graber against Mrs. Boswell, and brings us to the definite conclusion that any other advances made to her or in her behalf were directly chargeable to the fund provided by the note and mortgage which are the subject of this suit. These items were kept by Graber, in a separate and distinct account in his day-

book, and consist, first, of an item of $976.64, for claims against the Boswell estate, which had been paid by him. The correctness of this item is disputed by Mrs. Boswell, who testifies that of the $250 which had been paid for a metallic casket for the remains of the deceased, Mr. Graber paid only $83.40. An examination of the vouchers filed with the final account discloses that the claim of the undertaker shows three credits of $50 each, "by check," and credits for poultry and eggs, and a cash payment of $10, all at dates while Mrs. Boswell was conducting the hotel and sanitarium. The only voucher filed by Graber, in this connection, is for the balance of $83.40, and we are driven to the conclusion that plaintiff has not established her right to a credit of more than $83.40 thereon, by a preponderance of the evidence.

2. Another item is that for exhuming and transporting the remains of Captain Boswell to San Francisco for interment at the Presidio. This item is set out in the final account as being $50 and Mr. Graber filed a voucher therefor in that amount. But we also find him making an additional charge of $111 therefor, in his personal account against Mrs. Boswell, who insists that even the fifty-dollar charge is excessive. We think the item of $111 should be eliminated.

The remaining items going to make up the consideration of the note sued upon, consist of a number of sums of money advanced to defendant at various times, certain bills of hers paid by him, and the sum of $500, which constitutes his charge for legal services, and $75 as traveling expenses necessarily incurred in the same connection. We are satisfied that these items are correct and reasonable, and should be allowed.

Making the deductions indicated above, the amount of the decree will be reduced from $3,364.44 to $2,934.83, with which modification the decree of the trial court is affirmed without costs to either party in this court.                                    MODIFIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.

---

Former opinion modified November 4, 1919.

ON REHEARING.

(185 Pac. 231.)

On rehearing former opinion modified.

MODIFIED.

*Mr. Oliver P. Coshow,* for the petition for rehearing.

*Messrs. Neuner & Wimberly* and *Mr. C. L. Colvin,* contra.

BENSON, J.—The original opinion in this case will be found in 181 Pac. 986, where a statement of the issues may be found. The conditions under which both parties appear, render it exceedingly difficult to arrive at a satisfactory solution of the problems presented. Captain Boswell, a retired officer of the regular army, died at Boswell Springs, in Douglas County, on May 19, 1907, leaving a surviving widow, who is the defendant here, and a small estate, of which the principal item is the real property known as Boswell Springs. Captain Boswell left a will in which he named Thomas F. Graber as executor. The latter, being a resident of Oakland, California, where he was practicing attorney, could not qualify as executor, by

reason of being a nonresident, and so, the widow, Mrs. Emma E. Boswell, was appointed administratrix with the will annexed. Mr. Graber had been the intimate friend and legal adviser of the deceased for many years, and upon the death of the latter, Graber came at once to Oregon to assist the widow, assuming the task of being her legal adviser. He proceeded to direct and manage the probate of the estate, which was finally closed early in 1909. Thomas F. Graber died on September 2, 1914, leaving a will, naming his widow —the plaintiff herein—as executrix.

Upon assuming the duties of legal adviser to Mrs Boswell, the condition of her estate prompted him to advise her that in order to raise money for her immediate needs and in paying off certain indebtedness, she should give him her note, secured by mortgage upon certain of the real estate, and he would advance the necessary funds. This was subsequently done, the note being for the sum of $2,000, with interest at 8 per cent. At the time when the note and mortgage were executed, an insignificant amount of money had been advanced by Mr. Graber. Subsequently a portion of the real property was sold for $2,000, cash.

Mrs. Boswell continued to conduct the hotel at the mineral springs for about a year after her husband's death, when it was destroyed by fire, together with her account-books and all business memoranda, and she then went to California, where she has since resided. She placed implicit confidence in her legal adviser, and as a consequence has to depend very largely upon memory for any evidence of their business transactions, and this source of information is necessarily unsatisfactory. Mr. Graber, while it appears that he was faithful to her interests (although we may well question his judgment in some particulars), was, to

say the least, a slovenly bookkeeper as to his own affairs. His executrix can supply us with no information as to the moneys advanced by her husband, except a carelessly kept and poorly identified day-book, a few canceled checks, and what may be discovered from the public records of the probate court in the matter of the Boswell estate. Counsel for defendant urges very strenuously that since the note and mortgage were given for future advances, the complaint is wholly insufficient, in that it seeks a recovery upon the note itself for the face value thereof, basing the cause of suit upon the note, instead of seeking an accounting to determine the amount of money advanced thereon.

3. The plaintiff replies to this question, that the answer contains a positive allegation that the full amount called for by the note has been paid out of the proceeds of the sale of land above mentioned. The fact is, as disclosed by the record, that at the time issues were joined, both litigants were groping in the dark as to the real situation of affairs, and whatever light is now available to them or to the court is developed by the evidence given upon the trial. The parties are both widows, neither of whom is burdened with wealth, and we have before us all of the evidence that could possibly be produced if we were to require them to join issue again, in a formal suit for an accounting. We shall therefore treat the case as a suit for an accounting, and for a foreclosure of the mortgage to secure the amount so found to be due. The items discussed by us in the former opinion need not be further considered. The amounts secured by the mortgage consist of claims against the Boswell estate paid by Graber and such sums as he advanced to Mrs. Boswell, together with accrued interest on these items from the date of each until paid.

4. Of course, the burden of proof rests upon the plaintiff to establish the amount of money advanced to the defendant. With this rule of law in mind, we have gone over the evidence, item by item. It would be unprofitable to enter upon a discussion of details. We have considered with care the question of the charge of $500, for the professional services of Mr. Graber, and, under all of the circumstances, we cannot say that the charge is unreasonable.

5. In the argument upon rehearing there was some discussion of the fact that during Graber's lifetime, and after the hotel was burned, Graber had some of the mineral water shipped to him at Oakland, California, for which there has been no accounting. We are unable to find in the record any evidence as to the quantity of water so shipped, or its market value, if it had any, and it is evident from the record, that no living person possessed the desired information, and we are compelled to disregard this contention.

We find, from the evidence, that Mr. Graber paid $526.53, of the claims against the estate, expended $75, in traveling expenses in connection with the probate, paid $7.00 for notarial and recording fees, and plaintiff is entitled to recover these, together with $500, attorney's fees in probating the estate, with interest to date, amounting in all, to the sum of $1,796.60. In addition to this, he advanced money to the defendant in the sum of $340.90, which with interest to date, amounts to $566.98, and the decree will therefore be for the total sum of $2,363.58, and the usual decree of foreclosure. Neither party shall recover costs in either court.

FORMER OPINION MODIFIED.